The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| DELIVERANCE CHRISTIAN CHURCH, | ) | CASE NO. 11-62306 |
| | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtor. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| | ) | **PUBLICATION)** |

  FirstMerit Bank, N.A. ("FirstMerit"), a secured lender, filed a motion to compel discovery on November 22, 2011. Debtor opposed the motion, arguing that the information sought is privileged or confidential in nature. The court held a hearing on November 29, 2011. John Kostelnik represented FirstMerit and David Mucklow appeared on behalf of Debtor.

  Jurisdiction is premised in 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper.

  This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## ANALYSIS

Debtor is a church. Its major source of income is comprised of tithes and donations from its congregants. FirstMerit seeks discovery of this financial information in order to ascertain the financial wherewithal of the Debtor. Currently, FirstMerit has extended Debtor interim use of cash collateral, subject to expire on or about January 12, 2012. FirstMerit also has a motion to convert or dismiss the case pending, and the financials are imperative to its ability to determine whether Debtor has the ability to reorganize.

Debtor does not dispute FirstMerit's entitlement to financial information but does contest the form in which it should be provided. It argues that the personal information of its contributors is confidential. It has offered to provide sanitized information where contributors are identified only by number. It strongly opposes release of any personal information, including names, addresses, social security numbers, and bank routing numbers.

FirstMerit is willing to operate under a protective order but Debtor has not been amenable. Debtor steadfastly holds to the principal that the information is privileged or protected from release.

The applicable rule for this dispute is Federal Rule of Bankruptcy Procedure 7037, which incorporates Federal Rule of Civil Procedure 37 into bankruptcy practice. In accordance with Local Bankruptcy Rule 7026 and Rule 37(a)(1), the court finds that the parties did attempt to resolve this dispute before bringing it before the court.

### I. Membership List

Although FirstMerit's motion to compel directly references only one request for production of documents, seeking contribution information, Debtor contends that FirstMerit also seeks its membership roll, which Debtor also refuses to provide. Since this issue was raised at the hearing, the court will briefly address it.

At the core, discovery must focus on relevant information. The court fails to see how a membership list is relevant to FirstMerit's purposes. There may be members included on the list who have not stepped foot in the door in a decade, while there may be faithful attendees who are not members. While the court would not challenge that numbers relating to the congregants may be material, including the number of members on the roll, the number of people attending services, the number of those people who are financially supporting the church, the court cannot conclude that the actual membership list is relevant.

Further, membership lists are generally subject to heightened protection by courts

2

because of the potential chilling effect on the First Amendment right to freedom of association. *See, e.g.*, Christ Covenant Church v. Town of Southwest Ranches, 2008 WL 2686860 (S.D. Fla. 2008) (citing NAACP v. Ala., 357 U.S. 449 (1958) (other citations omitted)).

For these three reasons, the court will not compel Debtor to release the membership list to FirstMerit. In the event FirstMerit desires to pursue the membership list, it will need to do so upon further motion.

## II. Trade Secret Privilege

Debtor contends that tithing and giving records are privileged as a trade secret under Ohio Revised Code § 1333.61(D). The statue defines a trade secret as

> information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.R.C. § 1333.62(D)(1). Ohio employs a six factor analysis in determining whether information constitutes a trade secret. *See* State ex rel. Plain Dealer v. Ohio Dep't of Ins., 80 Ohio St.3d 513, 524-25 (1997) (citations omitted). The inquiry constitutes a question of fact. Arnos v. Medcorp, Inc., 2010 WL 1730139, *2 (Ohio App. 6th Dist. 2010) (slip copy) (citing Fred Siegel Co., L.P.A. v. Arter & Hadden, 85 Ohio St.3d 171 (1999)).

Debtor does not develop the trade secret argument, offering no explanation for how the donor information meets the definition. Instead, it merely recites the definition and summarily claims the financial information qualifies as a trade secret. The party asserting the privilege bears the burden of proof as to the existence of the privilege. *See* Arnos v. Medcorp, 2010 WL 1730139 (citations omitted); *see also* State ex rel. Besser v.

3

Ohio State Univ., 89 Ohio St.3d 396 (2000). "Conclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the burden of establishing trade secret status." Arnos, 2010 WL 1730139, *3 (citing Besser, 89 Ohio St.3d 396, 404) (other citation omitted)). Debtor failed to meet its burden of proof.

Additionally, one of the keys to asserting the existence of a trade secret is protection of the information to maintain its secrecy. *See, e.g.*, Plain Dealer, 80 Ohio St.3d 513, 525 (citing Water Mgt., Inc. v. Stayanchi, 15 Ohio St.3d 83, 86 (1984)); *see also* Recovery Express, Inc. v. Warren Cnty. Fraternal Order of Police, Inc., 2007 WL 2746549 (S.D. Ohio 2007) (examining whether donor cards were trade secrets). FirstMerit maintains that in January of this year, Debtor provided similar information to the bank. FirstMerit reviewed and returned the documents without photocopying. Debtor does not dispute this. Consequently, the court has doubts as to Debtor's ability to now claim the information is a privileged trade secret. On the record presented, Debtor failed to prove the existence of a trade secret.

### III. 11 U.S.C. § 107(b) protection

Section 107(b) provides an exception to the general rule that bankruptcy papers are "public records and open to examination by an entity at a reasonable time[] without charge." 11 U.S.C. § 107(b)(1). The exception permits a party to seek protection from this openness for sensitive information, including a "trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(2). The rule does not establish a privilege, but creates a framework for extending protection to certain sensitive information filed with the court.

For several reasons, Debtor's reliance on § 107(b) is misplaced. First, discovery is generally not filed with the court and is not open to public scrutiny. At best, Debtor's argument for protection under § 107(b) is premature. Second, it is undisputed that FirstMerit has agreed to enter into a protective order with Debtor related to the financial information. The issue between the parties is the scope of the protection. Finally, Debtor's arguments under this section relate specifically to the membership list, not the financial information. As outlined in section one above, the court will not compel release of the membership list.

### IV. Constitutional protection or privilege

To clarify, Debtor does not dispute that FirstMerit is entitled to financial information related to its tithes and donations. This is Debtor's main income stream. The question is what Debtor must provide: financial information with personal identifiers, including names, addresses, social security numbers, and bank routing numbers, or a sanitized version where the confidentiality of the donor is maintained. It is the court's understanding that under the sanitized version, each donor would be assigned a unique

donor number, so the amounts per donor will be available, but no personal information about the donor.

The scope of discovery is broad, allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed.R.Civ.P. 26(b)(1). More than one bankruptcy court has noted:

> The term "privilege" in Fed.R.Civ.P. 26(b) corresponds to the concept of privilege as developed in the law of evidence. U.S. v. Reynolds, 345 U.S. 1 (1953), 4 J. Moore, *Moore's Federal Practice*, ¶ 26.60[1] (2d ed. 1984). The burden of establishing the existence of a privilege rests with the party asserting it. In re Horowitz, 482 F.2d 72 (2d Cir. 1973), *cert. denied*, 414 U.S. 867 (1973) . . . . "[P]rivilege, in contrast to relevancy is to be construed narrowly." 4 J. Moore, *Moore's Federal Practice*, ¶ 26.60[1] at 26-188 (2d ed. 1984); see In re Sealed Case, 676 F.2d 793 (D.C. Cir. 1982).

In re Contemporary Mission, Inc., 44 B.R. 940, 943 (Bankr. D. Conn. 1984); *see also* In re The Bible Speaks, 69 B.R. 643 (Bankr. D. Mass. 1987).

Contemporary Mission involved a discovery request from a church. An involuntary petition was filed against the church, which argued it was a religious organization, not a "moneyed, business or commercial corporation" under § 303(a), and therefore could not be a debtor. The petitioning creditors sought information about the Contemporary Missions membership, service times, and advertising, apparently to determine if it was operating as a religious institution. Contemporary Mission asserted a privilege under the free exercise of religion clause of the First Amendment, which the court rejected, finding no "cognizable privilege." Contemporary Mission, 44 B.R. at 944.

The Contemporary Mission decision was based on a Supreme Court opinion that delineated between "constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes . . . [from] considerations . . . [of] purely secular disputes between third parties and a particular defendant, albeit a religious organization, in which fraud, breach of contract, and statutory violations are alleged." Id. at 943 (citing Gen. Counsel on Fin. and Admin. of the United Methodist Church v. Superior Court of California, 439 U.S. 1355, 1372-73 (1978)). The latter did not offend the freedom of religion because the court was not in a position to promote one religious viewpoint or determine a religious controversy.

In this regard, Contemporary Mission is analogous to the instant controversy,

involving a dispute amount non-governmental, private entities. This is not a situation where this Court will become entangled in a doctrinal argument or the promotion of a religious tenet.

Similarly, The Bible Speaks reaches a parallel conclusion. 69 B.R. 643. In that case, a former parishioner, who had given more than $6 million dollars to the church, filed a civil suit with claims including fraud and undue influence. The church objected to her discovery request, arguing that her requests for specific information on the church's beliefs and the advice given to her was privileged. After noting that the religious beliefs were regularly disseminated in sermons, and that the case did not involve "the real danger to First Amendment religious freedom–excessive government entanglement in religious affairs or in the evaluation of religious beliefs," the court held that "there is no First Amendment privilege based upon religious freedom in the context of discovery in private civil litigation." Id. at 648 (citations omitted). The church had failed to carry its burden in establishing the privilege.

These cases do not stand for a blanket proposition that a privilege does not exist. The Bible Speaks case references cases that do find a privilege. *See, e.g.*, Adolph Coors Co. v. Wallace, 570 F.Supp 202 (N.D. Cal. 1983); Black Panther Party v. Smith, 661 F.2d 1243 (D.C. Cir. 1981), *vacated mem. sub. nom.*, 458 U.S. 1118 (1981); Grinnell v. Hackett, 22 Fed.R.Serv.2d (Callaghan) 482 (D.R.I. 1976). Rather, the court reads Contemporary Mission and The Bible Speaks to say that discovery is intended to be broad, privileges are narrow, and when there is minimal danger to infringing on a First Amendment right, the burden of establishing a privilege is high.

Not all courts have utilized an identical approach. *See, e.g.*, Christ Covenant Church v. Town of Southwest Ranches, 2008 WL 2686860 (S.D. Fla. 2008). In Christ Covenant, the church sought a building permit and the town opposed the request. The church said that failing to grant the right to expand its facilities imposed on its First Amendment rights, including freedom of association and religion. The town sought discovery, including membership lists, "for the purpose of testing the veracity of the Church's factual assertions regarding attendance at current programming and unavailability of facilities for life events." Id. at * 5. The court set forth the framework for invoking the privilege related to the freedom of association. To start, the party asserting the burden must present a "prima facie showing of infringement by the challenged discovery." Id. at *6. Once this burden is satisfied, the party seeking discovery has to demonstrate a compelling need for the discovery, "such that disclosure of the requested information warrants the infringement of the disclosing party's First Amendment rights." Id. at * 7 (citations omitted). A balancing test is employed for this segment of the review.

The court finds that Christ Covenant recognizes the better approach considering the significance of the First Amendment rights involved. Additionally, the balancing test operates to synthesize this approach with that employed in Contemporary Mission and

6

The Bible Speaks. The party from whom discovery is sought must first present a prima facie case of entitlement to a First Amendment privilege. Once the initial burden is satisfied, the party seeking discovery must demonstrate a compelling need for the information. A number of factors can be employed in the balancing test to determine if a compelling need exists.

This approach also parallels those cases involving governmental actors. For example, in Baldwin v. Comm'r of Internal Revenue, a minister initiated a tax redetermination proceeding. 648 F.2d 483 (8th Cir. 1981). The IRS requested membership and contributor lists from the minister's church. The request was denied:

> In Citizens State Bank, we recognized that the significant right of freedom of association grounded in the First Amendment may limit IRS access to, among other things, an organization's membership and contributor lists. U.S. v. Citizens State Bank, 612 F.2d 1091, 1093-95 (8th Cir. 1980). Once the taxpayer makes a prima facie showing that the information requested arguably infringes on the organization's First Amendment rights, the burden shifts to the government to make an appropriate showing of need for the material. Id. at 1094. We reiterated that disclosure of a group's membership lists can be compelled only by a showing that there is a rational connection between such disclosure and a legitimate governmental end, and that the governmental interest in the disclosure is both cogent and compelling. Id. (quoting Pollard v. Roberts, 283 F.Supp. 248, 256-57 (E.D. Ark.), *aff'd* 393 U.S. 14 (1986).

Id. at 487.[1]

Debtor has met its initial burden, establishing a prima facie case of a potential infringement on First Amendment rights, including association and religion. In its response, it notes the chilling effect release of the personal information of donors could have on future giving and membership. As Debtor points out, many courts also recognize the privacy right that goes hand in hand with the freedom of association. NAACP v. Ala., 357 U.S. 449 (1958). The burden now shifts to FirstMerit to establish a compelling need for the information.

As previously stated, the financial information is not at issue. It is highly relevant. What is at issue is the personal information attached to that information, including the names and addresses of the specific donors. FirstMerit was asked several times during

---

[1] This line of cases is illuminating but not dispositive given that it involves state action.

the hearing for a basis for its request for the personal information and provided no sound response to the court's inquiry. Consequently, the court cannot find a compelling need for the personal information. The court is not thoroughly convinced that the donors' names meets the relevancy requirement. This is not the same as knowing the name and address of an account receivable for a commercial enterprise. In that case, the bank may need the information for collection purposes. In this case, there is no claim of a right to payment from parishioners that can be coerced in the future. Debtor has offered a reasonable solution which results in balancing FirstMerit's need for the information with protection of information potentially encompassing First Amendment liberties. Giving each donor a unique number in lieu of a name and address allows for any analysis of the data that could be performed.

> Fear of the consequences of the disclosure of one's religious affiliation may be palpable and real at a certain point in history. There is, therefore, in my view, implicit in the First Amendment's guarantee of religious freedom, the right to choose whether or not to disclose one's religious affiliation lest forced disclosure inhibit the free exercise of one's faith. I have to believe that, when a person provides her name and address to a church that has asked her to become a member, she reasonably expects that her name and address will be disclosed to other church members, used by the church to invite her to church functions, and used to solicit her contributions to the church's financial welfare. There is nothing I know of in the American experience that suggests to me that by giving one's name and address to a church one thereby agrees to the publication of one's religious affiliation to the whole world.

Johnson v. Washington Times Corp., 208 F.R.D. 16, 17 (D.D.C. 2002).

It is important to note that the focus is on the rights of the donor, not the rights of the church. It is the donors' rights of affiliation and free exercise that are implicated. Similarly, Americans normally view it as unconstitutional to deny a criminal defendant a jury that has been selected without discrimination. Yet the obverse has been held as well. There is the constitutional right of the *juror* to participate on a jury without regard to his or her race. Batson v. Ky., 476 U.S. 79 (1986).

This is not to say that FirstMerit cannot ever have the greater detail that is requested. They have the right to receive such information based upon particularized facts setting forth a compelling need. The court can imagine a factual scenario in which such a request could be justified, but no case has been made thus far.

An appropriate order will be entered reflecting the decision of the Court.

# # #

**SERVICE LIST**

David A Mucklow
919 E Turkeyfoot Lake Rd #B
Akron, OH 44312

John F. Kostelnik
Frantz Ward LLP
2500 Key Center
127 Public Square
Cleveland, OH 44114