**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 09:16 AM November 6, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| DELIVERANCE CHRISTIAN CHURCH, | ) | CASE NO. 11-62306 |
| | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtor. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

Now before the court are three fee applications filed by (1) Anthony J. DeGirolamo, for his services as chapter 11 trustee ("Trustee"); (2) Anthony J. DeGirolamo, as counsel for the chapter 11 trustee ("Counsel"), and (3) Russ Kiko Associates, Inc. ("Kiko"), as auctioneer. No objections were filed in response to the applications filed by Trustee or Counsel. The Kiko application engendered several responses and replies. On September 5, 2013, FirstMerit Bank, NA ("FirstMerit") filed an objection to the application. The court held a hearing on September 10, 2013 and took the Kiko application under advisement. After the hearing, Kiko obtained leave and filed a reply on September 17, 2013. FirstMerit filed a sur-reply on September 19, 2013. On September 26, 2013, Kiko filed a motion to strike the sur-reply. FirstMerit opposed the motion to strike on October 10, 2013. Neither party requested further hearing on the Kiko application.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core matter.

1

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Debtor, a church, filed a chapter 11 case on July 13, 2011. At filing, Debtor faced foreclosure of its premises located at 2130-31st St., N.W., Canton, Ohio. FirstMerit, the secured lender, was owed in excess of $1,200,000 on the property. Although Debtor desired to reorganize, it was not able to retain the property.

In September 2012, FirstMerit moved for the appointment of a chapter 11 trustee. On September 20, 2012, the court granted the request and Anthony J. DeGirolamo's appointment was approved on September 28, 2012. He subsequently also employed his firm as counsel for Trustee.

On November 7, 2012, Trustee filed a motion to sell the real estate free and clear of liens. The sale order was entered by the court on December 19, 2012. The plan was to first market the property and, if unsuccessful, then proceed to an auction. In the sale order, FirstMerit agreed to a $15,000 carve-out from the sale proceeds to cover the sale costs and expenses as well as the fees and expenses of trustee and his professionals. FirstMerit was given the right to credit bid at the sale. The sale order also established the limits of compensation to be paid to the auctioneer. The sale order contains the following provision:

> The terms of the sale shall require the successful bidder to pay 10% down, and the balance at closing, for the purchase of the Real Property and Vehicles at the sale; provided, however, that FirstMerit shall not be required to pay 10% down should it be the successful bidder via credit bid.

(Sale Order ¶ 7, ECF No. 177). No other specific terms of sale were presented, or approved, by the court.

Contemporaneously, Trustee took steps to employ Kiko to auction the property. The application was granted without any objection. Kiko was to receive a six percent (6%) commission on the real estate sale, plus $3,000.00 in estimated expenses. The order approving the application was entered December 19, 2012 and contained a provision limiting Kiko's compensation if FirstMerit successfully credit bid at the sale: "if FirstMerit Bank, N.A. ("FirstMerit") successfully credit bids on the real property, the Auctioneer's compensation shall be limited to 4.00% of FirstMerit's credit bid or $3,000.00, whichever is greater, but not to exceed $10,000.00, plus expenses. (Order Authorizing the Debtor to Retain and Employ Russ Kiko Associates, Inc. ¶ 4, ECF Doc. 176.)

The Real Estate Auction Sales Listing Contract ("Contract") executed thereafter between

2

Kiko and Trustee on January 28, 2013 did not mention the down payment but did contain a buyer's premium of ten percent to be added to the purchase price. (Kiko Fee App., Ex. A, ¶ 2, Doc. 211.) Paragraph three, on page two of the Contract, also stated that "[a]ll fees/commissions are earned upon execution of the contract of sale and are to be based on the highest acceptable bid notwithstanding Buyer's or Owner's default or refusal or inability to transfer the property or otherwise complete the sale. Owner authorizes and directs escrow agent to pay Kiko all fees/commissions and all costs as set forth herein." (Kiko Fee App., Ex. A, Doc. 211.) Kiko's employment application also contained the following paragraph:

> 9. James Gill is aware of the provisions of 11 U.S.C. § 328 and has agreed on his own behalf and on behalf of the Auctioneer, notwithstanding the terms and conditions of employment set forth herein, that the Court may allow compensation different from the compensation provided herein if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of the fixing of such terms and conditions.

(App. for Authority to Employ Russ Kiko Assoc., Inc. ¶ 9, ECF Doc. 172.)

Kiko's advertisements for the sale stated that fifteen percent down was required the day of the sale and that a ten percent buyer's premium would be added to the final bid "to determine the purchase price." The former was in excess of the amount approved by the court and the latter was not approved by the court but was part of the Contract.

A notice of the proposed sale was filed on January 18, 2013 setting the auction for February 28, 2013. The auction did not proceed smoothly. FirstMerit objected to two terms announced by Kiko at the sale: a fifteen percent down payment and a ten percent buyer's premium. In spite of FirstMerit's attempts to stop the sale, the auctioneer proceeded and FirstMerit was the winning bidder with a credit bid of $522,500.00.[1] This outbid another bid of $450,000.00.

In light of its concerns, FirstMerit declined to close the sale, which led to Trustee hiring another auctioneer, Dutton Real Estate Services ("Dutton"), and a subsequent auction on May 23, 2013. That auction resulted in FirstMerit purchasing the property, by credit bid, for $150,000.00. Per the terms of the Amended Order Authorizing the Sale of Real and Personal Property, FirstMerit paid Dutton $10,000.00 from the sale proceeds: $5,500.00 as a commission and $4,500.00 in expenses.

The Trustee's fee application for his services as Trustee and as Trustee's counsel and the Kiko fee application are now before the court. FirstMerit objected to Kiko's fee application. No

---

[1] This figure represents a bid of $475,000.00 plus a ten percent buyer's premium of $47,500.00, for a total bid of $522,500.00.

3

objections were filed on either of the Trustee's fee applications.

## DISCUSSION

### I. Motion to strike

On September 26, 2013, Kiko filed a "Motion to Strike Sur-Reply of FirstMerit Bank, N.A. to the Reply of Russ Kiko Associates, Inc. to Objection of FirstMerit Bank, N.A. to the Application of Anthony J. DeGirolamo for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses to Russ Kiko Associates, Inc. or in the Alternative for Leave to File Its Own Sur-Reply to FirstMerit, N.A. Sur-reply."

The matter before the court started with a fee application, filed by Trustee, for Kiko. On September 5, 2013, FirstMerit filed an objection to the Kiko fee application. This is the equivalent of a response. The court held a hearing on the fee application, and related objection, on September 10, 2013. Following the hearing, Kiko obtained leave and filed a reply, dated September 17, 2013. This is where things go slightly awry. Under the court's understanding of bankruptcy rules and practice, Kiko's reply was the last expected submission to the court.

However, two days later, FirstMerit also filed a document captioned as a reply. FirstMerit contends that, since Kiko didn't originally file the fee application, and Kiko's reply contains new arguments, it should be treated as an original pleading. Under this view, FirstMerit is responding, not replying.

The court agrees with Kiko's assessment and would deem FirstMerit's "reply" to be a sur-reply. The Kiko reply was in support of the original fee application irrespective of the original filer. Under Local Bankruptcy Rule 9013, FirstMerit should have obtained leave before filing a sur-reply. Kiko seeks to strike this document on this basis.

The court will deny the motion to strike. Kiko came to the party late and now wants to control the guest list. The court finds no harm in allowing the sur-reply.

### II. Kiko fee application

In its application, Kiko seeks $10,000.00 in compensation of its services and reimbursement of $2,939.60 in expenses. This represents the maximum compensation to which Kiko is entitled. The court cannot award the compensation because Kiko did not comply with the terms of the sale order approved by the court on December 19, 2012. Thousand Acres Dev., LLC v. Iannacone (In re Kreger), 307 B.R. 106, 110 (B.A.P. 8th Cir. 2004) ( recognizing "[the three sale orders] created a binding obligation to sell the property on the terms stated in the orders."); In re Smith, 352 B.R. 500, 501 (Bankr. N.D. Ala. 2006) (finding that "[o]nce the bankruptcy court enters a final order approving a motion for authority to sell, the parties become bound to close the sale pursuant to the terms of the sale as approved by the court."); Galleria Inv. LLC v. Hong Duck, LLC (In re Galleria Inv. LLC), 2008 WL 7842107 (Bankr. N.D. Ga. 2008) (stating "[a]bsent a determination by the

4

Court that it has somehow been misled or has overlooked an unusual provision or other compelling circumstances, an order approving bidding procedures is binding on the parties in the case . . . ."); *see also* Greenblatt v. Steinberg, 339 B.R. 458 (N.D. Ill. 2006) (creditor was not allowed to credit bid because it failed to meet a condition in the sale procedures order); Guilford Transp. Ind., Inc., 124 B.R. 169, 180 (D. Del. 2002) (adequate and reasonable notice premised on full and accurate disclosure of the sale terms); Thaler v. Lindo (In re Kenilworth Sys. Corp), 204 B.R. 665, 669 (E.D.N.Y. 1997) (affirming bankruptcy court "decision not to allow a claim that would necessarily alter an explicit term of the Sale Order"); In re Landscape Properties, Inc., 100 B.R. 445, 447 (Bankr. E.D. Ark. 1988) ("Parties in bankruptcy proceedings are entitled to full disclosure of the proposed terms of sale . . . ."); In re Corum, 2012 WL 5514790, * 7 (Bankr. E.D. Va. 2012) (slip copy) (stating "[i]t is universally accepted that the terms of a proposed sale not in the ordinary course must be disclosed to the Court and to all creditors and parties in interest"); Bryant v. Am. Nat'l Bank and Tr. Co. of Chicago, 407 F.Supp. 360, 366 (D.C. Ill. 1976) (stating in dicta that the failure to object to a sale leaves only room to object to a deviation from the terms approved or challenging unincluded terms after the sale); In re Hoke, 1996 WL 9433905 (M.D.N.C. 1996) (unpublished) (claim disallowed because creditor failed to timely file an amended proof of claim as required under sale order).

      The court approved a ten percent down payment, not the fifteen percent down payment advertised by Kiko and announced at the sale. And the court never approved a buyer's premium. The court recognizes that the buyer's premium was included in the Contract signed by Trustee but the Contract is at odds with the court's order approving the sale. A buyer's premium is a material term that must be explicitly included in the order if it is desired to be in effect.[2] *See* In Remote Operating Sys., Inc., 238 B.R. 656 (Bankr. N.D. Tex. 1999). The court order, containing the terms noticed to creditors and interested parties, is controlling.

      Even though FirstMerit raised the issue of the down payment and buyer's premium at the auction, Kiko proceeded with the auction and sold the property on its terms, not the terms approved by the court. Since the sale did not close, Kiko's services in auctioning the real estate were of no benefit to the estate. *See* In re Harman, 2006 WL 6591823 *6 (Bankr. N.D. Ga. 2006) (recognizing "that, in general, the bankruptcy estate should not be required to pay commissions for sales of property that do not close and that do not produce a benefit to the estate or to creditors"); In re D & M Land Co., LLC, 2010 WL 358525 (Bankr. E.D.N.C. 2010); In re Mall at One Assoc., L.P., 185 B.R. 981 (Bankr. E.D. Penn. 1995). The estate was forced to incur additional

---

[2] This requirement will also serve to clarify the purpose of the buyer's premium. "Though who gets to keep the [buyer's] premium is subject to negotiation between the consignor/seller and the auctioneer, it is generally retained by the auctioneer." In re Driller, 2004 WL 1661981 * 1, fn. 1 (Bankr. D. Idaho 2004) (unpublished); *accord* Carter v. Rodgers, 220 F.3d 1249 (11th Cir. 2000); Priddy v. Eley (In re Rossmiller), 82 F.3d 426 (10th Cir. 1996) (unpublished); In re Daufuskie Island Prop, LLC, 2010 WL 5105151 (Bankr. D. S.C. 2010 (slip copy). In other cases, the buyer's premium is used to augment the purchase price. *See, e.g.,* In re NJ Affordable Homes Corp., 2007 WL 2713046 (Bankr. D. N.J. 2007); In re Williamson, 327 B.R. 578 (Bankr. E.D. Va. 2005). In yet another case, it has been used to specifically bring money into the estate. *See, e.g.,* In re A-1 Plank & Scaffold Mfg., Inc., 437 B.R. 689, 695 (Bankr. D. Kan. 2010) (allowing creditor to credit bid but imposing a 10% buyer's premium 'in lieu of the costs a lender would incur to foreclose, market, and sell the property') (citation omitted)).

administrative expenses with a second auction, expenses all born by FirstMerit.[3]   Payment of fees and expenses is premised upon compliance with orders and benefit to the estate.   In the event his matter is reviewed by someone not familiar with local bankruptcy practices, the following point should be known.   Kiko is not a newcomer to the local bankruptcy scene.   It has undoubtedly performed more auctions pursuant to bankruptcy court orders than all other auctioneers in this location combined, at least for a period of several decades.   The failure to follow court orders resulted in no benefit and accordingly no compensation or expense reimbursement is due.

### III.     Trustee's fee application

It is apparent that the Trustee made a critical mistake in signing the Contract when he approved the buyer's premium and engaged a contractor of his choice that failed to follow the law.   As a result of the mistake, the court hereby reduces Trustee's fee by one-half.   This is, clearly, a made-up number.   There was apparent harm given the lower offers on the second sale date which directly harmed the secured creditor.   Trustee submitted the sale motion and related documents to the court for approval and was aware of the terms.   He hired the auctioneer and signed the Contract.   The provision containing the buyer's premium was emphasized by an arrow.   Trustee was in a position to minimize the problems that arose.   Nonetheless, Trustee performed a substantial amount of work in a thankless case that has brought trouble to most who have been involved in it.   Consequently, a reduction in fees is warranted rather than a denial.   The court hereby awards Trustee $2,500.00 in fees and $732.80 in expenses, for a total of $3,232.80.

### IV.     Counsel's fee application

No objection was filed.   Considering the reduction to Trustee's fees, the court will approve Counsel's fee application.   Further, it does not appear that attorney fees were charged for reviewing the Kiko contract.   Counsel is awarded $6,441.00 in fees and $694.98 in expenses.

An order will be entered immediately reflecting the decision of the court.

#     #     #

**Service List:**

Deliverance Christian Church
3106 Woodridge Ave NW
Canton, OH 44718

Anthony J. DeGirolamo
Courtyard Centre, Suite 307
116 Cleveland Ave., N.W.
Canton, OH 44702

---

3  The only estate assets result from a carve-out of sale proceeds by FirstMerit.

United States Trustee
Suite 441
H.M Metzenbaum U.S. Courthouse
201 Superior Avenue
Cleveland, Oh 44114

David A Mucklow
919 E Turkeyfoot Lake Rd #B
Akron, OH 44312

John F. Kostelnik
Emily C. Barlage
Frantz Ward LLP
2500 Key Center
127 Public Square
Cleveland, OH   44114

Michael S. Gruber
Jason N. Bing
Zollinger, Gruber, Thomas & Co.
6370 Mt. Pleasant St., N.W.
P.O. Box 2985
North Canton, OH   44720-0985